NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   EC-11-1719-MkDJu |
| WALTER R. PINEDA, | Bk. No.   10-91936 |
| Debtor. | Adv. No.   10-09060 |
| WALTER R. PINEDA, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| BANK OF AMERICA, N.A.; RECONTRUST COMPANY, N.A.; BANK OF NEW YORK MELLON, N.A., INC,; GSR MORTGAGE LOAN TRUST 2003-9; GOLDMAN SACHS, INC.; UNITED STATES TRUSTEE; GARY FARRAR, Chapter 7 Trustee, | |
| Appellees. | |

Argued and Submitted on March 22, 2013
at Sacramento, California

Filed – April 23, 2013

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Ronald H. Sargis, Bankruptcy Judge, Presiding

---

Appearances:    Appellant Walter R. Pineda argued on his own behalf; Andrea McDonald Hicks of Bryan Cave, LLP argued for Appellees Bank of America, N.A., Recontrust Company, N.A., Bank of New York Mellon, N.A., Inc., Goldman Sachs, Inc. and GSR Mortgage Loan Trust 2003-9.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Before:  MARKELL, DUNN and JURY, Bankruptcy Judges.

**INTRODUCTION**

Chapter 7[1] debtor Walter R. Pineda ("Pineda") commenced an adversary proceeding ("Adversary Proceeding") against Bank of America and others regarding the origination and securitization of his home loan ("Loan") and regarding enforcement of that Loan, particularly the commencement of foreclosure proceedings.  The bankruptcy court dismissed Pineda's first amended complaint ("FAC") without prejudice and with leave to amend ("First Dismissal Order").  After Pineda filed a second amended complaint ("SAC"), the bankruptcy court dismissed the entire adversary proceeding without prejudice and without leave to amend, but subject to a final decision on whether the court should abstain under 28 U.S.C. § 1334(c)(1) ("Second Dismissal Order").  Pineda appealed that ruling.  Later, the bankruptcy court entered an abstention order ("Abstention Order"), which fully and finally disposed of the Adversary Proceeding.  Pineda did not file a notice of appeal after entry of the Abstention Order, but he did file a motion for leave to appeal.

It is debatable whether Pineda took any action that should count as an appeal of the Abstention Order.  If there was no timely appeal of the Abstention Order, Pineda's appeal of the Second Dismissal Order should be dismissed as moot.  We will, however, err on the side of determining this matter on the

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

merits, so we will treat Pineda's motion for leave to appeal as if it were a notice of appeal from the Abstention Order. We AFFIRM the bankruptcy court's Abstention Order. Because we are affirming the Abstention Order and because both of the bankruptcy court's dismissal orders were without prejudice, we do not reach any substantive issues related to the dismissal orders.

**FACTS**[2]

**A.   The Loan and Pineda's Bankruptcy Case**

Pineda admits that, on or about August 13, 2002, in exchange for the Loan, he executed a promissory note ("Note") and a deed of trust ("Trust Deed") against his residence located in Sonora, California ("Property"). Pineda does not dispute that he stopped making payments on the Loan in 2008, or that foreclosure proceedings were commenced against the Property in January 2010, with the recording of a Notice of Default.

Pineda attributes his financial condition to a combination of factors including acute health problems, which at times have required hospitalization, and the national financial crisis, which he in part blames on the defendants named in the Adversary Proceeding.

Apparently in response to a scheduled foreclosure sale of the Property, Pineda filed his chapter 7 bankruptcy case in May 2010. Gary Farrar was appointed to serve as chapter 7 trustee ("Trustee"). On his Schedule C, property claimed as exempt,

---

[2]We have derived most of the facts recited herein from the allegations of Pineda's complaints and from the procedural history of Pineda's Adversary Proceeding, which is not subject to legitimate dispute.

3

Pineda listed as an asset "Preparation of civil complaint against Bank of America et al for fraud, breach of contract, violations of truth In Lending Act." He did not list these claims on his Schedule B of personal property, but his Statement of Financial Affairs listed a pending lawsuit ("State Court Lawsuit") he and his wife had filed in Tuolumne County Superior Court against Bank of America and ReconTrust to enjoin foreclosure, for declaratory relief and for an accounting (case no. CV 55686).

In August 2010, the Trustee filed his final report reflecting that there were no non-exempt assets of any value for him to administer, liquidate or distribute. Later that same year, in November 2010, Pineda filed an Amended Schedule B of personal property which contained the following entry: "Civil Lawsuit Against Bank of America, Goldman Sachs, Bank of New York Mellon – Estimated value 1 - 10 million dollars." He also listed this same asset on his Amended Schedule C, but he did not list there any exemption value or any asset value. Pineda never filed proof of service reflecting any service of notice of his amended schedules, but his form notice of amended schedules contained his signed certification stating that he had given notice of the filing of his schedule amendments to the Trustee and all other interested parties.

The Trustee never amended his final report. Nor did he take any action related to the claims against Bank of America and others until July 2011, when he signed off on a document entitled "Stipulation to Abandon" ("Stipulation To Abandon") which Pineda apparently prepared. Among other things, the Trustee stated in the Stipulation To Abandon that he was authorizing Pineda to

4

prosecute all of the claims alleged in the Adversary Proceeding and also that he was abandoning all rights that were the subject of the Adversary Proceeding. After the Trustee signed off on the Stipulation To Abandon, Pineda filed it in the Adversary Proceeding.

**B.  Pineda's Adversary Proceeding**

Meanwhile, Pineda commenced the Adversary Proceeding in August 2010. Over the next year, he went through three versions of his complaint. The first one, filed when he commenced the Adversary Proceeding, contained the following three claims for relief: (1) for violation of the Federal Fair Debt Collection Practices Act, Pub. L. No. 95-109, 91 Stat. 874 (1977) (codified at 15 U.S.C. §§ 1692, et seq.) ("Fed. FDCPA"); (2) for a determination of the validity of Bank of America's claimed lien against the Property; and (3) for fraud. Pineda conceded in his original complaint that he owed an obligation to someone on account of the Loan, but he asserted that, as a result of the securitization of his Loan and/or because of certain payments defendants allegedly received from the Troubled Asset Relief Program, or "TARP," none of the defendants continued to have any right or entitlement to enforce the Note or the Trust Deed.

**C.  Pineda's FAC**

Pursuant to stipulations between the parties filed in December 2010 and January 2011, Pineda filed his FAC in February 2011.[3] The FAC greatly elaborated on the defendants' alleged

---

[3]The December 2010 stipulation further provided that, because the State Court Lawsuit essentially concerned the same

(continued...)

5

misconduct.[4]  The FAC contains only four claims for relief, for fraud, breach of contract, unjust enrichment and declaratory relief.  But within each claim for relief Pineda alleged that the defendants violated a host of California and federal (non-bankruptcy) laws.[5]  These violations allegedly occurred as a part of the following activities: (1) when Bank of America originated the loan; (2) when Bank of America or its wholly-owned subsidiary Bank of America Corp. LP (jointly, "BOA") collected Pineda's Loan payments; (3) when BOA purported to sell the Loan to Goldman Sachs, Inc. and/or defendant Goldman Sachs Mortgage Securities Corp. (jointly, "Goldman Sachs"); (4) when Goldman Sachs paid BOA for originating and purporting to sell the Loan; (5) when Goldman

---

[3](...continued)
subject matter as the Adversary Proceeding, the parties agreed to dismiss the State Court Lawsuit without prejudice.  The bankruptcy court's December 24, 2010 order based on the December 2010 stipulation did not address this aspect of the parties' stipulation.  That order merely set deadlines for filing the FAC and the response thereto and set a continued hearing date for the initial status conference.

[4]The bankruptcy court issued memoranda of decision in conjunction with its dismissals of the FAC and the SAC.  These memoranda included detailed descriptions of both complaints and their allegations.  In light of our analysis and resolution of this appeal, no purpose would be served by our including in this decision a lengthy description of the allegations of either complaint.

[5]Pineda alleged within the four claims for relief that the defendants had violated the following California and federal laws among others: (1) the Truth in Lending Act, 15 U.S.C. §§ 1600, et seq.; (2) Fed. FDCPA; (3) the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e); (4) California's Unfair Competition Law, Cal. Bus. & Profs. Code §§ 17200, et seq.; (5) Cal Civ. Code § 2924(a) (wrongful foreclosure); and (6) Cal. Civ. Code § 1709 (fraud and deceit).

6

Sachs formed Goldman Sachs' Risk Mortgage Trust 2003-09 ("Trust"); (6) When Goldman Sachs aggregated the Loan with other home loans to form a portfolio of loans that purportedly became property of the Trust; (7) When Goldman Sachs sold fractional interests in the Trust to third-party investors; (8) when BOA refused to properly, accurately and/or timely respond to Pineda's requests for a loan modification, for an accounting, and for other information regarding the Loan; and (9) when BOA and ReconTrust Company commenced foreclosure proceedings under the Trust Deed.

**D. Dismissal of the FAC, and the Court's Warnings Regarding Standing and Abstention**

All of the named defendants (collectively, "Defendants") filed a motion to dismiss the FAC, which the bankruptcy court granted without prejudice and with leave to amend. On June 24, 2011, the bankruptcy court entered a memorandum decision and order explaining in detail its reasoning for dismissing the FAC ("FAC Dismissal Memorandum"). In the FAC Dismissal Memorandum, the bankruptcy court initially pointed out that, even though the FAC contained 28 pages and 131 paragraphs of allegations, it was short on the specifics regarding who harmed Pineda and how he was harmed. Instead, much of the FAC focused on how the alleged conduct of Defendants and others involved in the secondary mortgage market harmed those who invested in that market, caused a nationwide financial crisis and precipitated a significant drop in real estate values, including the value of Pineda's Property.

The bankruptcy court looked at each of Pineda's four claims for relief as well as many of the alleged violations of

7

California and federal law and determined that Pineda had not stated any plausible claims for relief. As to each claim and alleged violation, the court held that Pineda had failed to allege essential elements.

More importantly for our purposes, the bankruptcy court discussed in the FAC Dismissal Memorandum Pineda's apparent lack of standing to prosecute the Adversary Proceeding and whether it might be appropriate for the court to abstain under 28 U.S.C. § 1334(c)(1). With respect to standing, the court pointed out that Pineda's claims against the Defendants were property of the estate under § 541(a) and that only the Trustee had standing to prosecute the claims on behalf of the estate. The court noted that, while Pineda had disclosed the existence of the claims on his original Schedule C and his Amended Schedule B, the Trustee had not taken any steps to formally abandon the claims or to permit Pineda to pursue them on behalf of the estate. The court stated that it would not rule on standing grounds at that point, but it advised Pineda that he needed to take action to obtain from the Trustee either formal abandonment of the claims or authorization for Pineda to pursue them.

As for discretionary abstention under 28 U.S.C. § 1334(c)(1), the court opined that it was authorized to sua sponte consider whether it should exercise its discretion to abstain. The court noted that Pineda already had been granted his chapter 7 discharge and that the Trustee already had issued a no-asset report indicating that there were no assets to administer on behalf of the estate. Consequently, the court said, there did not appear to be any reason for the bankruptcy

8

court to exercise jurisdiction over the Adversary Proceeding, except as a remnant of Pineda's completed chapter 7 case. Accordingly, the court warned Pineda:

> If the Plaintiff elects to file a second amended complaint, he must be . . . prepared to address why this court should not abstain from hearing this adversary proceeding. No Bankruptcy Code issues appear to remain in this case, nor any assets to be administered by the trustee or the Plaintiff through any plan.

FAC Dismissal Memorandum (Jun. 24, 2011) at 32.

In July 2011, just before he filed his SAC, Pineda attempted to address the bankruptcy court's standing concerns by obtaining the Trustee's signature on the Stipulation To Abandon and by filing it in the Adversary Proceeding. But the bankruptcy court never entered any order approving the Stipulation to Abandon or authorizing the Trustee's abandonment of Pineda's claims against the Defendants. Among other problems, there was no proof of service indicating that either the Trustee or Pineda gave anyone notice of the Trustee's proposed abandonment of Pineda's claims.

**E.  Pineda's SAC**

Pineda then filed his SAC. The SAC stated significantly fewer allegations of general misconduct against the Defendants, but many of the same themes from the FAC were still present. First, Pineda alleged that BOA as originator of the Loan lied to Pineda about the source of funds it used to make the Loan and later refused to disclose the true source of funds for the Loan. Second, Pineda alleged that BOA twice purported to assign the Loan creating uncertainty as to who owned the Loan. Third, Pineda alleged that, as a result of BOA's actions and a succession of purported owners of the Loan and trustees of the

9

Trust, uncertainty existed as to who was entitled to enforce the Loan and who was entitled to act as their agent. And fourth, Pineda alleged that BOA's and ReconTrust's Loan enforcement activities, including their commencement of nonjudicial foreclosure proceedings, were fraudulent, illegal and full of inaccuracies and procedural errors.

Based on these allegations, the SAC contained the following four claims for relief: (1) for declaratory relief; (2) for foreclosure fraud; (3) for wrongful foreclosure; and (4) for rescission of contract.

The SAC's prayer for relief requested the following: (1) an evidentiary hearing to determine the rights and obligations of the parties; (2) a finding of foreclosure fraud giving rise to punitive damages; (3) a finding of wrongful foreclosure; (4) rescission of contract based on lack of consideration and mutual assent; (5) a declaration that the Note effectively was unsecured; (6) punitive damages; (7) a declaration that Defendants had breached various agreements and had violated the Real Estate Settlement Procedures Act and California's Unfair Competition Law; (8) a finding of fraudulent foreclosure against BOA and ReconTrust; and (9) a finding the neither BOA nor ReconTrust had authority under California law to commence foreclosure proceedings against Pineda.

**F.  Dismissal of the SAC, and the Court's Further Consideration of Abstention**

On September 26, 2011, the Defendants moved to dismiss the SAC, and in December 2011, the bankruptcy court granted that motion. On December 6, 2011, the bankruptcy court issued a

10

memorandum decision and order explaining in detail its reasoning for dismissing the SAC ("SAC Dismissal Memorandum"). In the SAC Dismissal Memorandum, the bankruptcy court determined that Pineda had failed to state any plausible claims for relief in his SAC. The court carefully evaluated each of the SAC's claims for relief and concluded that each claim for relief was missing allegations of one or more essential elements.

More importantly, the court once again raised the issue of discretionary abstention. The court noted that it previously had raised the abstention issue in its earlier FAC Dismissal Memorandum, that it had directed Pineda to address the abstention issue if he filed an SAC, and that Pineda had not addressed the abstention issue either in his SAC or in his opposition to the Defendants' dismissal motion. The court held that Pineda's Adversary Proceeding had nothing to do with his chapter 7 bankruptcy case, any of Pineda's rights as a chapter 7 debtor, or the administration of estate assets. The court further opined:

> The Plaintiff fails to provide the court with any substantial arguments as to why his litigation of state and non-bankruptcy issues should be tried in this specialized court rather than properly in either the state court or district court, each being courts of general jurisdiction. Though bankruptcy courts regularly preside over matters arising under state law, such is done to further the purposes of the Bankruptcy Code and statutory scheme providing for debtors and creditors enacted by Congress.

SAC Dismissal Memorandum (Dec. 6, 2011), at p. 22.

On the one hand, the bankruptcy court stated in the SAC Dismissal Memorandum that "it is appropriate for the court to abstain." Id. On the other hand, the court stated that it would issue an Order to Show Cause why the court should not abstain,

11

thereby indicating a willingness to give Pineda one last chance to address the issue and to attempt to persuade the court that abstention was inappropriate.

Consistent with the SAC Dismissal Memorandum, the bankruptcy court entered the Second Dismissal Order on December 6, 2011, granting the Defendants' motion to dismiss the SAC. That order provided for: (1) the dismissal of the case without prejudice and without leave to amend; and (2) the issuance of an order to show cause why the court should not abstain under 28 U.S.C. § 1334(c)(1). In addition, the SAC Dismissal Order prohibited Pineda from filing another amended complaint and from filing a motion to amend pending the hearing on the order to show cause.

**G. Order to Show Cause re Abstention and Pineda's Response**

The bankruptcy court thereafter issued its order to show cause why it should not abstain from hearing the Adversary Proceeding, and Pineda filed a memorandum of points and authorities explaining why he thought abstention was inappropriate. Citing McDaniel v. ABN Amro Mortg. Group, 364 B.R. 644, 650 (S.D. Ohio 2007), Pineda stated that there were thirteen factors the court should consider before abstaining under 28 U.S.C. § 1334(c)(1). Pineda contended that all of the McDaniel factors militated against abstention. We identify below each of these factors and the reason (if any) Pineda gave why each factor militated against abstention.

**1. The effect or lack of effect on the efficient administration of the estate if a court abstains**

According to Pineda, his claims against the Defendants impacted the bankruptcy estate because no notice was given to

12

creditors or any other interested parties of the Trustee's intent to abandon as reflected in the Stipulation To Abandon.[6]

Pineda further asserted that his being subjected to "financial double jeopardy" and the cloud on title to the Property also impacted the estate, but he did not explain how the estate was impacted. Nor was any impact on the estate evident. He already had received his chapter 7 discharge from his prepetition liabilities and it was obvious the Trustee had no intention of administering the Property or the Adversary Proceeding claims.

Finally, Pineda mentions certain allegedly inconsistent exhibits and declaration testimony presented by the Defendants in the course of his litigation against them, but once again Pineda did not in any way tie these concerns to the bankruptcy estate.

**2. The extent to which state law issues predominate over bankruptcy issues**

Pineda did not identify a single bankruptcy claim or issue from his SAC. Instead, Pineda in essence argued that the Trustee's failure to effectively abandon the Adversary Proceeding claims meant that they technically still were property of the estate. Thus, Pineda suggested that because the Adversary Proceeding Claims were still estate property, those claims – claims explicitly based on California and federal non-bankruptcy

---

[6]This argument is particularly ironic. The record reflects that Pineda filed the Stipulation To Abandon on behalf of the Trustee but did not file any proof of service along with that stipulation. Pineda needed to establish his standing to prosecute the Adversary Proceeding, but his argument against abstention seriously undermines his efforts to establish his standing.

13

law – somehow became claims based on bankruptcy law for purposes of this factor.

**3.  The difficulty or unsettled nature of the applicable state law**

According to Pineda, his complaint presented no difficult or unsettled state law issues.

**4.  The presence of a related proceeding commenced in state court or other non-bankruptcy court**

According to Pineda, there no longer was any pending action in state court.  But he did not present anything to the bankruptcy court demonstrating that the State Court Lawsuit actually had been dismissed.

**5.  The jurisdictional basis, if any, other than 28 U.S.C. § 1334**

Pineda did not really give any reason why this factor militated against abstention.  He merely reiterated his belief that bankruptcy court jurisdiction was appropriate under 28 U.S.C. §§ 1334 and 157(b)(2)(K).

**6.  The degree of relatedness or remoteness of the proceeding to the main bankruptcy case**

Pineda argued that the Adversary Proceeding claims were interrelated with the bankruptcy case because the claims would in essence determine the issue of who was entitled to enforce the Loan.  But Pineda offered no explanation why that issue was of any relevance to the bankruptcy case, when Pineda already had been discharged and the Trustee obviously had no intention of administering the Property which secured the Loan.

14

**7. The substance rather than form of an asserted core proceeding**

According to Pineda, the substance of the core proceeding would be the determination of who was entitled to enforce the Loan. However, Pineda did not identify any genuine connection between this purportedly core proceeding and his bankruptcy case.

**8. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court**

Pineda asserted that the purportedly core claims could not be severed from his state law claims "because of the tainted documents submitted by the defendants." Pineda's assertion is incomprehensible, nonsensical, or both.

**9. The burden on this court's docket**

According to Pineda, while there might be some burden, the bankruptcy court should take into account the fact that it already was very familiar with his Adversary Proceeding, whereas any state court presiding over the matter would be starting from scratch. Pineda ignores the fact that, after over a year of bankruptcy court litigation and after having filed three versions of his complaint, his Adversary Proceeding had not gotten past the pleading stage. Nor had discovery commenced. Even if the bankruptcy court had been willing to give him another chance to amend his complaint, the bankruptcy court litigation was still very much just beginning.

**10.  The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties.**

Pineda claimed there was no indication of forum shopping on his part.  The bankruptcy court found otherwise, as we discuss below.

**11.  The existence of a right to a jury trial**

Pineda did not directly answer the question of whether any of the parties to the Adversary Proceeding still might claim a right to a jury trial.  Instead, he merely stated that he had not requested a jury trial.

**12.  The presence in the proceeding of non-debtor parties**

Pineda did not directly address this factor either.  He merely stated that "[n]o issues of non-debtor parties is presently a factor."  Pineda ignored the fact that all of the Defendants were non-debtor parties, and that none of them had filed proofs of claims or otherwise participated in his bankruptcy case, except as parties to the adversary proceeding.

**13.  Any unusual or other significant factors**

Pineda did not identify any unusual factors, but he did claim that the court could authorize him to prosecute the Adversary Proceeding on behalf of the estate as if he were "debtor-in-possession."  This is simply wrong.  There is no such thing as a chapter 7 debtor in possession.

**H.  The Abstention Hearing and the Abstention Ruling**

On February 22, 2012, the bankruptcy court held a hearing on the Order to Show Cause during which the court engaged in a lengthy colloquy with Pineda regarding the propriety of

16

abstention. At the conclusion of the colloquy, the court ruled that it was going to sustain its Order to Show Cause and that it was going to abstain from hearing the Adversary Proceeding.

The court's reasoning supporting its abstention ruling is set forth in a minute entry dated February 22, 2012 ("Abstention Minute Entry"). In the Abstention Minute Entry, after summarizing the procedural history of the bankruptcy case and the contents of the SAC, the bankruptcy court noted once again that the bankruptcy case was completed some time ago, when Pineda received his discharge and when the trustee determined that there were no assets worth administering on behalf of the estate. The court acknowledged that the Trustee had not formally abandoned the Adversary Proceeding claims, that the Stipulation to Abandon was not effective to abandon them formally, and so the Adversary Proceeding claims technically were still estate assets. But the court found that, during the more than 21 months the bankruptcy case had been open, neither the Trustee nor any creditors had shown any interest in having the claims prosecuted on behalf of and for the benefit of the estate. Hence, the court reasoned, it was clear that the Adversary Proceeding claims would be prosecuted, if at all, by Pineda for his own personal benefit. Citing Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1167 (9th Cir.1990), the bankruptcy court stated that the Ninth Circuit had adopted factors to guide the abstention analysis identical to the abstention factors Pineda had drawn from McDaniel. Set forth below is a summary of the court's consideration of each of these factors.

17

**1. The effect or lack thereof on the efficient administration of the estate if a Court recommends abstention**

The bankruptcy court pointed out that, by filing his no asset report and by signing off on the Stipulation to Abandon, the Trustee had indicated many months before that he was finished administering the bankruptcy estate. Consequently, the prosecution of the Adversary Proceeding claims would have no bearing on estate administration regardless of where and whether Pineda prosecuted the claims for his own benefit.

**2. The extent to which state law issues predominate over bankruptcy issues**

According to the bankruptcy court, the SAC raised no bankruptcy law issues. Moreover, the bankruptcy court found, the Adversary Proceeding would not affect the estate in any way.

**3. The difficulty or unsettled nature of the applicable law**

The bankruptcy court agreed with Pineda that California law governing foreclosure procedures is generally well settled. However, the court pointed out that Pineda's SAC did not limit itself to an attack on the foreclosure procedures utilized by BOA and ReconTrust. Rather, Pineda attempted to assert in the SAC relatively novel legal theories purportedly entitling him to invalidate lien rights if the Defendants (1) failed to accurately disclose to him the source of funds for his Loan or (2) transferred the rights under the Loan to a mortgage loan securitization trust.

18

**4. The presence of a related proceeding commenced in state court or other nonbankruptcy court**

The bankruptcy court noted that, even if the State Court Lawsuit no longer was pending, there was no bar to Pineda commencing a new action in state court.

**5. The jurisdictional basis, if any, other than 28 U.S.C. § 1334**

The bankruptcy court noted that Pineda had not posited any basis for federal court jurisdiction other than 28 U.S.C. § 1334.

**6. The degree of relatedness or remoteness of the proceeding to the main bankruptcy case**

The bankruptcy court found that there was no connection between the Adversary Proceeding and Pineda's bankruptcy case. As the bankruptcy court put it, the Trustee had demonstrated that he had no intention of either prosecuting the Adversary Proceeding claims or otherwise administering them for the benefit of the estate. The court also mentioned that Pineda was not seeking to reorganize in a chapter 11 or rehabilitate in a chapter 13.

**7. The substance rather than form of an asserted "core" proceeding**

The bankruptcy court ruled that none of the Adversary Proceeding claims constituted a core proceeding. According to the bankruptcy court, the Adversary Proceeding was a "related-to" matter in which all of the claims were based on non-bankruptcy law and were based on events that arose prior to and/or independent of Pineda's bankruptcy case.

19

**8. The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court**

According to the bankruptcy court, Pineda had not stated any core bankruptcy claims to sever.

**9. The burden on [the bankruptcy court's] docket**

The court stated that its docket was significantly impacted and that, with all of the matters it had genuinely arising under Title 11, arising in cases under Title 11, or in related-to matters actually impacting the bankruptcy case, it was in no position to hear the Adversary Proceeding.

**10. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties**

The bankruptcy court found that Pineda was seeking to forum shop based on two grounds: (1) the advantages of the automatic stay, and (2) an apparent belief that he was less likely to prevail if he prosecuted his claims in state court.[7]

---

[7]In this regard, Pineda's comments at the February 22, 2012 abstention hearing seemed to confirm the court's forum shopping suspicions, as follows:

MR. PINEDA: But I think it's morally wrong, your Honor, to allow the bank to basically --

THE COURT: Then go to court that properly has jurisdiction to exercise the State Court's -- Superior Court[s] have general jurisdiction where you can raise it. If you have a federal --

MR. PINEDA: They've already taken judicial notice of the bogus assignment. I'm going to go in there dead on

(continued...)

20

**11. The existence of a right to a jury trial**

The bankruptcy court acknowledged that the Defendants had not filed an answer yet, so it was unknown whether they would claim a right to a jury trial. But the bankruptcy court pointed out that the claims were the type for which jury trial rights exist.

**12. The presence in the proceeding of nondebtor parties**

Curiously, the court stated that the Adversary Proceeding only involved Pineda and BOA. The bankruptcy court did not mention the other Defendants or the fact that none of the Defendants had filed a proof of claim or otherwise participated in Pineda's bankruptcy case, except as defendants in the Adversary Proceeding.

Separate and apart from the Tucson factors, the bankruptcy court also noted the conundrum Pineda faced regarding standing. As the court put it, the Adversary Proceeding claims technically were still estate property and apparently would remain estate property until the bankruptcy case was closed. As such, Pineda still lacked standing to prosecute the claims. While Pineda could have attempted to cure his lack of standing by taking additional steps towards formal abandonment of the claims, this only would have served to further undermine any lingering technical connection between the claims and his bankruptcy case.

At the conclusion of its abstention analysis, the bankruptcy

---

[7](...continued)
arrival.

Hr'g Tr. (Feb 22, 2012) at 16:6-14.

court stated:

> For this bankruptcy court to continue with the litigation would have it make a determination on new, uncharted state law theories, invalidate notes and deeds of trust, terminate rights in real property, and award actual and punitive damages to [Pineda], all of which has no impact on the bankruptcy estate. To do so disregards the California Superior Courts as the state court of general jurisdiction to address those issues, and intrudes bankruptcy jurisdiction when it has no impact on the bankruptcy case.

Abstention Minute Entry (Feb. 22, 2012) at p. 6.

On February 27, 2012, the bankruptcy court entered its Abstention Order. In addition to abstaining from hearing the Adversary Proceeding pursuant to 28 U.S.C. § 1334(c)(1), the court also directed the clerk of court to close the adversary proceeding and prohibited Pineda from filing any further complaints or motions seeking relief from the bankruptcy court.

**I. Pineda's Filing of a Notice of Appeal and a Motion for Leave to Appeal**

On December 20, 2011, Pineda timely filed a notice of appeal from the December 6, 2011 Second Dismissal Order. Pineda did not file either a new notice of appeal or an amended notice of appeal after the court entered the Abstention Order. But in response to an order from this Panel issued on February 16, 2012, questioning the finality of the Second Dismissal Order, Pineda filed on March 7, 2012, a motion for leave to appeal. We discuss below the implications of these filings on our jurisdiction.

**JURISDICTION**

Generally speaking, we have jurisdiction to review final bankruptcy court orders and judgments under 28 U.S.C. § 158, and the bankruptcy court's jurisdiction is based on 28 U.S.C. § 1334.

22

We further address our jurisdiction and the bankruptcy court's jurisdiction in the discussion section of this decision.

## ISSUES

1.   Do we have jurisdiction to review the Abstention Order?
2.   Did the bankruptcy court abuse its discretion by abstaining from hearing the Adversary Proceeding under 28 U.S.C. § 1334(c)(1)?
3.   Do any of Pineda's arguments on appeal justify reversal?

## STANDARDS OF REVIEW

We must raise sua sponte issues regarding our appellate jurisdiction, and we review those issues de novo. See Belli v. Temkin (In re Belli), 268 B.R. 851, 853-54 (9th Cir. BAP 2001).

We review the bankruptcy court's Abstention Order for an abuse of discretion. In re Bankr. Petition Preparers who are not Certified Pursuant to Requirements of Ariz. Sup. Ct., 307 B.R. 134, 140 (9th Cir. BAP 2004). Under the abuse of discretion standard of review, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). And if the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted).

23

**DISCUSSION**

## A. Appellate Jurisdiction

As mentioned above, Pineda timely filed a notice of appeal from the Second Dismissal Order on December 20, 2011. However, the Second Dismissal Order was not a final order because it did not fully and finally dispose of the Adversary Proceeding. The Second Dismissal Order explicitly left open for future determination the issue of abstention, and the bankruptcy court clearly anticipated further proceedings on the abstention issue at the time it entered the Second Dismissal Order. Consequently, the Second Dismissal Order was interlocutory – not final – because it did not manifest the court's intent to be its final act in the matter. See Brown v. Wilshire Credit Corp. (In re Brown), 484 F.3d 1116, 1120 (9th Cir. 2007); Mullen v. Hamlin (In re Hamlin), 465 B.R. 863, 868 (9th Cir. BAP 2012).

We generally lack jurisdiction to hear appeals from interlocutory orders unless we grant leave to appeal. See Giesbrecht v. Fitzgerald (In re Giesbrecht), 429 B.R. 682, 687 (9th Cir. BAP 2010). On February 16, 2012, the Panel issued an order advising Pineda of the finality defect and directing him either to file a motion for leave to appeal or to take other action to establish that the Panel had jurisdiction over his appeal. In response, Pineda filed both a motion for leave to appeal and a responsive brief explaining why he believed the Second Dismissal Order was a final order. He filed these documents with the Panel on March 6, 2012, and in the adversary proceeding on March 7, 2012.

In relevant part, the leave motion references the bankruptcy

24

court's abstention ruling and "respectfully requests this Honorable Panel grant leave to appeal" the abstention ruling. After reviewing Pineda's response, our motions panel issued an order deeming the finality defect satisfied as a result of the bankruptcy court's entry of the Abstention Order on February 27, 2012.

The entry of the Abstention Order "cured" the finality defect associated with Pineda's appeal of the Second Dismissal Order. See Parks v. Drummond (In re Parks), 475 B.R. 703, 706 (9th Cir. BAP 2012); see also Rains v. Finn (In re Rains), 428 F.3d 893, 901 (9th Cir 2005); Cato v. Fresno City, 220 F.3d 1073, 1074-75 (9th Cir. 2000); Dannenberg v. Software Toolworks, Inc., 16 F.3d 1073, 1075 (9th Cir. 1994).

Nonetheless, even if the entry of the Abstention Order effectively gave us jurisdiction to review the Second Dismissal Order, our review of that order would be moot unless Pineda also appealed the Abstention Order. In other words, unless we also have jurisdiction over the Abstention Order, there is no way we could provide any meaningful relief with respect to any rulings in the Second Dismissal Order. See, e.g., In re Parks, 475 B.R. at 706; Omoto v. Ruggera (In re Omoto), 85 B.R. 98, 99-100 (9th Cir. BAP 1988).

In order to appeal the Abstention Order, Pineda should have filed pursuant to Rules 8001 and 8002 either a new notice of appeal or an amended notice of appeal within the time limits specified in Rule 8002. In the absence of either, our jurisdiction would be limited to reviewing the Second Dismissal Order. See, e.g., United Computer Sys., Inc. v. AT & T Corp.,

25

298 F3d 756, 761 (9th Cir. 2002) (limiting review to timely appealed judgment); Pacific Employers Ins. Co. v. Domino's Pizza, Inc., 144 F3d 1270, 1278 (9th Cir. 1998)(same); see generally Rule 8002(b)(4) ("A party intending to challenge an alteration or amendment of the judgment, order, or decree shall file a notice, or an amended notice, of appeal within the time prescribed by this Rule 8002 measured from the entry of the order disposing of the last such motion outstanding.").

On the other hand, before the expiration of the time to appeal the Abstention Order, Pineda filed his motion for leave to appeal. The leave motion explicitly requested that the Panel grant Pineda permission to appeal the Abstention Order. While not formally entitled a notice of appeal, there is little doubt that Pineda expressed an intent to appeal the Abstention Order. And while his leave motion did not satisfy all of the requirements for a notice of appeal under Rule 8001(a),[8] that rule does not indicate that those requirements necessarily apply to an amended notice of appeal.

In light of the above circumstances, the liberal construction given to notices of appeal, and the general policy favoring decisions on the merits, we will construe Pineda's leave motion as an amended notice of appeal seeking review of the

---

[8]Rule 8001(a) states in relevant part:

The notice of appeal shall (1) conform substantially to the appropriate Official Form, (2) contain the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys, and (3) be accompanied by the prescribed fee.

Abstention Order. See, e.g., Smith v. Barry, 502 U.S. 244, 248-50 (1992) (construing pro se's appellate brief as a potential notice of appeal); Brannan v. U.S., 993 F.2d 709 (9th Cir. 1993) (construing pro se's letter challenging district court order as a notice of appeal).[9] Even though Pineda intended the leave motion to serve as a request for leave to appeal under Rule 8003(a), this does not mean that the leave motion could not also serve as an amended notice of appeal for purposes of Rules 8001 and 8002. See Smith, 502 U.S. at 249.

Accordingly, we will proceed to examine the merits of the Abstention Order.

**B. Review of Abstention Order**

By way of district court referral, bankruptcy courts have original but not exclusive jurisdiction over all civil proceedings arising under title 11, or arising in or related to cases under title 11. See 28 U.S.C. § 1334(b); 28 U.S.C. § 157(a). A proceeding "arises under" title 11 if its asserts a right to relief created by the Bankruptcy Code. See Cal. Franchise Tax Bd. v. Wilshire Courtyard (In re Wilshire Courtyard), 459 B.R. 416, 424 (9th Cir. BAP 2011). A proceeding "arises in" a case under title 11 if it is an administrative

---

[9]We note that the appellants in Smith and Brannan were pro se litigants. We also note that Pineda, while nominally a pro se litigant, was formerly an attorney. It is questionable whether the liberality afforded to pro ses without formal legal training should be extended to Pineda, who obviously had such training and who obviously knew how to file a notice of appeal. In the final analysis, however, these concerns are not sufficient to cause us to depart from our conclusion that we have jurisdiction to review the Abstention Order.

27

matter that only could occur in a bankruptcy case and would have no existence outside of bankruptcy. See id.; Krasnoff v. Marshack (In re General Carriers Corp.), 258 B.R. 181, 189 (9th Cir. BAP 2001). Meanwhile, a proceeding typically is considered "related to" a case under title 11 proceeding if it potentially will have some impact on the bankruptcy case or the bankruptcy estate, but it does not invoke a right to relief created by the Bankruptcy Code and could exist outside of bankruptcy. Id.

In an effort to define which types of proceedings non-Article-III bankruptcy judges could hear and determine by final judgment, Congress created a non-exhaustive list of so-called "core" proceedings. See 28 U.S.C. § 157(b)(2); see also Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 702 F.3d 553, 565 (9th Cir. 2012).

Notwithstanding the broad jurisdictional grant afforded to bankruptcy courts under 28 U.S.C. §§ 1334(b) and 157(a), Congress also has given bankruptcy courts discretionary authority to abstain from hearing certain matters:

> . . . nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).[10]

---

[10] Rule 5011(b) at one time prohibited bankruptcy courts from entering final abstention orders, but that Rule was amended in 1991 explicitly for the purpose of ending that prohibition. See Advisory Committee Notes Accompanying Rule 5011. In addition, courts have held that bankruptcy courts have authority to enter

(continued...)

28

Here, the bankruptcy court considered Pineda's SAC, the relevant circumstances from Pineda's bankruptcy case and the permissive abstention factors recited in In re Tucson Estates, Inc., 912 F.2d at 1167. It thereafter concluded that it would abstain under 28 U.S.C. § 1334(c)(1).

It bears repeating at this point that, under the abuse of discretion standard of review, if the bankruptcy court identified the correct legal rule to apply, we only will overturn its decision if its factual findings or its application of facts to the law were "illogical, implausible or without support in inferences that may be drawn from facts in the record." Hinkson, 585 F.3d at 1262.

In this case, the bankruptcy court applied the correct law. It considered, among other factors, the Tucson Estates factors. We already have gone over in detail both Pineda's assessment of these factors and the bankruptcy court's assessment of these factors. It suffices for us to say here that we disagree with most of Pineda's assessment and that we agree with substantially all of the bankruptcy court's assessment. We certainly do not see anything in the bankruptcy court's assessment that is

---

[10](...continued) final orders for discretionary abstention under 28 U.S.C. § 1334(c)(1), even in non-core proceedings. See Holtzclaw v. State Farm Fire and Casualty Co. (In re Holtzclaw), 131 B.R. 162, 164 (E.D. Cal. 1991) (citing cases). In any event, by not objecting to the bankruptcy court entering a final decision and by all of his other conduct before the bankruptcy court and on appeal, Pineda has forfeited any objection he otherwise might have made to the bankruptcy court's entry of a final abstention order. See In re Bellingham Ins. Agency, Inc., 702 F.3d at 566-70.

29

illogical, implausible or without support in the record. Nor does anything in Pineda's opening appeal brief persuade us otherwise, as we explain below.

Furthermore, we also agree with the bankruptcy court's overarching assessment that the Adversary Proceeding would not have any impact on either the bankruptcy estate or the bankruptcy case, given that Pineda already had received his discharge and given that the Trustee had clearly demonstrated that he had no interest in administering either the Property or the Adversary Proceeding claims on behalf of and for the benefit of the estate.

In short, we see no reversible error in the bankruptcy court's abstention ruling.

**C. Pineda's Arguments on Appeal**

In addition to Pineda's differing assessment of the <u>Tucson Estates</u> factors, which we addressed above, Pineda's opening appeal brief makes four other arguments why we should reverse the bankruptcy court's abstention order. We will address each of these arguments in turn.

**1. 28 U.S.C. § 157(b)(2)(K)**

First, Pineda has argued on appeal that the bankruptcy court erred in entering the Abstention Order because the bankruptcy court did not acknowledge that his Adversary Proceeding in part sought a determination of the validity of liens against the Property. Consequently, Pineda argues, the Adversary Proceeding was a core proceeding under 28 U.S.C. § 157(b)(2)(K), so the bankruptcy court should not have abstained.

But Pineda's reliance on the nominally core nature of his lien validity claim is misplaced. Section 1334(c)(1) and the

30

<u>Tucson Estates</u> factors permit discretionary abstention even when the litigation includes core as well as non-core claims. Indeed, one of the <u>Tucson Estates</u> factors called upon the bankruptcy court to assess the <u>substance rather than the form</u> of any asserted "core" claim.

Here, as reflected in the record, the bankruptcy court was well aware that, technically, all of the Adversary Proceeding claims and the Property were still property of the estate, so the lien validity claim at least nominally would qualify as a 28 U.S.C. § 157(b)(2)(K) core proceeding. But the court also considered the fact that neither the Property nor the Adversary Proceeding claims were going to have any impact on either the bankruptcy case or the bankruptcy estate because the bankruptcy case essentially was completed. Pineda already had received his chapter 7 discharge, and the Trustee had made it clear that he had no intention of administering the Property, the Adversary Proceeding claims or any other estate assets. Consequently, the bankruptcy court found that there was no substance to Pineda's so-called core claim. We cannot say that this finding was illogical, implausible or without support in the record.

**2. Violation of Stay**

Second, Pineda has argued on appeal that the bankruptcy court erred in entering the Abstention Order because he has a claim against the Defendants pursuant to § 362(k) for violation of the automatic stay. According to Pineda, sometime in early 2011, the Defendants rescheduled a foreclosure sale on the Property for March 15, 2011. Pineda now asserts that he is entitled to damages under § 362(k) because the automatic stay in

31

his bankruptcy case was still in effect.

Assuming without deciding that Pineda has a claim for relief under § 362(k), this argument still fails. None of Pineda's complaints ever attempted to state a claim for relief under § 362(k). Nor did Pineda mention this prospective claim in his response to the order to show cause re abstention. Nor did he mention it at the abstention hearing. Simply put, Pineda did not present his prospective § 362(k) claim to the bankruptcy court for consideration, so we will not consider it here on appeal.

We typically will not consider issues raised for the first time on appeal when the bankruptcy court had no opportunity to consider them. See United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, ___ n.9, 130 S.Ct. 1367, 1376 n.9 (2010) ("We need not settle that question, however, because the parties did not raise it in the courts below."); Scovis v. Henrichsen (In re Scovis), 249 F.3d 975, 984 (9th Cir. 2001) (holding that court would not consider issue raised for the first time on appeal absent exceptional circumstances). Nor will we consider facts and documents not before the bankruptcy court. See Oyama v. Sheehan (In re Sheehan), 253 F.3d 507, 512 n.5 (9th Cir. 2001); Kirschner v. Uniden Corp. of Am., 842 F.2d 1074, 1077-78 (9th Cir. 1988). As stated by the Ninth Circuit in Kirschner, "'We are here concerned only with the record before the trial judge when his decision was made.'" Kirschner, 842 F.2d at 1077 (quoting United States v. Walker, 601 F.2d 1051, 1055 (9th Cir. 1979)).

Pineda contends that exceptional circumstances justify our consideration of his prospective § 362(k) claim in the first

32

instance. But we are unpersuaded that there are any circumstances, exceptional or otherwise, that would justify our consideration of this claim. To the contrary, all of the relevant circumstances militate against such consideration. Pineda has admitted that he knew of the alleged stay violation in or around March 2011. Even though he filed his SAC in August 2011, he did not include in the SAC his prospective § 362(k) claim. He also did not request leave to further amend his complaint to add that claim after he filed the SAC.

We acknowledge that, in December 2011, when the bankruptcy court issued the Second Dismissal Order, the court prohibited Pineda from thereafter filing another amended complaint or from requesting leave to do so, at least until the court heard the order to show cause re abstention. But Pineda has not explained why he could not have amended his complaint to add that claim before December 2011, especially when he has admitted to knowing of the alleged stay violation in or around March 2011. Even after December 2011, by way of the order to show cause re abstention, the bankruptcy court directed Pineda to file a responsive brief explaining all reasons why he thought abstention was inappropriate. Pineda could have mentioned his prospective § 362(k) claim in that brief, or at least at the abstention hearing, but he did not do so. Accordingly, we will not consider the prospective § 362(k) claim as potential grounds for reversal of the Abstention Order.

**3. Bias/Due Process**

Third, Pineda has argued on appeal that the court was biased against him, and as a result of that bias he was denied due

33

process. As a threshold matter, we note that Pineda is emphatic he is <u>not</u> arguing that the bankruptcy judge had a duty to recuse himself. In his reply brief on appeal, Pineda states:

> Appellees [sic] counsels' argument of Appellant's request for recusal is . . . misplaced. <u>Appellant's issue of violation of a fair hearing has been misconstrued</u> by Appellees [sic] counsel <u>as a request for recusal</u>.

Aplt Reply Br. (Jun. 18, 2012) at p. 4 (emphasis added). Pineda also states:

> The Honorable Ronald H. Sargis [sic] decisions have been favorable to both sides. Appellant's claims of violation of due process right to fair hearing involves Appellee's submission of false declaration and intentional violation of [§] 362.

<u>Id.</u> at n.2.

Consequently, Pineda has waived any recusal argument he otherwise could have made on appeal. <u>See</u> <u>Burnett v. Resurgent Capital Servs. (In re Burnett)</u>, 435 F.3d 971, 975-76 (9th Cir. 2006); <u>Golden v. Chicago Title Ins. Co. (In re Choo)</u>, 273 B.R. 608, 613 (9th Cir. BAP 2002).

As for Pineda's due process claim, due process requires reasonable notice and a meaningful opportunity to be heard. <u>See</u> <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950); <u>see also</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."); <u>Berry v. U.S. Trustee (In re Sustaita)</u>, 438 B.R. 198, 210 (9th Cir. BAP 2010), <u>aff'd</u>, 460 Fed. Appx. 627 (9th Cir. 2011) ("prior to sanctioning a party, the court must provide the party to be sanctioned with particularized notice to comport with due process.")

Here, Pineda had an abundance of notice and opportunity to be heard on the abstention issue. The bankruptcy court raised the abstention issue several times, including but not limited to in the FAC Dismissal Memorandum, in the SAC Dismissal Memorandum and in the order to show cause re abstention. Each time, the bankruptcy court asked Pineda to explain why abstention was inappropriate. The bankruptcy court also held hearings on the FAC, on the SAC and on the order to show cause re abstention during which Pineda had the opportunity to orally argue the abstention issue. In sum, Pineda had months of notice and a number of hearings to address the abstention issue. This is well beyond the level of notice and opportunity for hearing that due process required.

While not entirely clear, Pineda apparently contends that the bankruptcy judge's alleged bias rendered the notice and hearings meaningless. We disagree. Pineda has not pointed us to anything in the record that would lead us to conclude that the judge was biased against Pineda. Pineda primarily points to two events that he contends establish bias. One of these was the court's statement at a hearing as follows:

> Here's the other question I had for the two of you. This is still sitting in a Chapter 7, probably getting close to a dismissal date, but there was a request for a TRO.
>
> Is the automatic stay not in effect in this case? Or do you just say, Judge, I know the case will close and the automatic stay is going to go away, so I just want to go ahead and give you a heads up and let's get started on the injunction.

Hr'g Tr. (April 6, 2011) at 55:12-20.

According to Pineda, the bankruptcy court demonstrated its

35

bias because it was offering potential excuses for the Defendants' alleged stay violation. We disagree. In part, the hearing was held to address Pineda's request for a temporary restraining order to prevent a foreclosure on the Property. The only logical construction of the court's statement, taken in context, is that the court was perplexed why Pineda needed a restraining order when the automatic stay ordinarily should have been in effect and normally would have barred foreclosure proceedings against the Property. If anything, the comment helped Pineda because it suggested to Pineda another potential ground for challenging the Defendants' actions: a potential action for violation of the automatic stay.

In any event, the court had legitimate grounds for inquiring regarding the status of the automatic stay. If the stay was still in effect, Pineda had no immediate need for a temporary restraining order.

Pineda further contends that the bankruptcy court also demonstrated its bias because it never enforced Rule 7007.1, which in relevant part requires any party who is a corporation to file a disclosure statement identifying any corporation that owns 10% or more of its stock. But a procedural omission of this nature simply does not amount to a showing of bias by itself. If Pineda had filed a motion requesting any sort of relief based on the Defendants' noncompliance with Rule 7007.1, and if the bankruptcy court had denied that relief, the bankruptcy court's affirmative refusal to enforce Rule 7007.1 might have raised some legitimate concerns. But Pineda has not pointed us to anything in the record reflecting that the court affirmatively refused to

36

enforce Rule 7007.1.  Nor have we ourselves found anything in the record along these lines.  As a result, we do not perceive any conduct which demonstrates bias.[11]

**4.  Prohibition Against Future Filings**

Finally, while Pineda did not devote any significant portion of his appellate briefing to the issue, Pineda does complain in passing about the provision in the bankruptcy court's Abstention Order prohibiting him from filing any further complaints or motions seeking relief from the bankruptcy court.[12]  While the bankruptcy court's prohibition seems broad in isolation, we hold that it must be construed in the context in which it was made and limited on that basis.  We construe this prohibition as only applying to the Adversary Proceeding and the Adversary Proceeding claims.  Given that limited construction of the prohibition and given our holding that the bankruptcy court properly abstained from hearing the Adversary Proceeding claims, we hold that the bankruptcy court did not commit reversible error by including the prohibition in its Abstention Order.

---

[11]Pineda also argues that, because the bankruptcy court did not enforce Rule 7007.1 sua sponte, that failure by itself is reversible error.  For the same reason we rejected above Pineda's bias argument based on Rule 7007.1, we also reject his reversible error argument based on Rule 7007.1.

[12]For instance, on page 23 of his opening appeal brief, Pineda stated: "The court's order prohibiting Appellant the right to pursue relief for Appellees [sic] intentional violation of 11 U.S.C. § 362(a) constitutes an abuse of discretion and also error, as a matter of law."

37

**CONCLUSION**

For the reasons set forth above, we AFFIRM.[13]

------

[13]On August 9, 2012, Pineda filed in the BAP Clerk's Office a request to supplement the record. That request might be more properly characterized as a notice of supplemental authorities. Regardless of how we characterize it, we hereby DENY that request. The supplemental authority cited in the request is irrelevant to both the arguments in Pineda's opening brief and to our analysis and disposition of this appeal.